Bass v WV Preserv. Partners, LLC (2022 NY Slip Op 05745)

Bass v WV Preserv. Partners, LLC

2022 NY Slip Op 05745

Decided on October 13, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: October 13, 2022

Before: Renwick, J.P., Friedman, Singh, Shulman, Higgitt, JJ. 

Index No. 156001/21 Appeal No. 16443 Case No. 2022-00584 

[*1]Gail E. Bass, Plaintiff-Appellant,
v
WV Preservation Partners, LLC, et al., Defendants-Respondents.

Newman Ferrara LLP, New York (Jarred I. Kassenoff of counsel), for appellant.
Axelrod, Fingerhut & Dennis, New York (Osman Dennis of counsel), for respondents.

Order, Supreme Court, New York County (William Perry, J.), entered February 7, 2022, which denied plaintiff's motion for a preliminary injunction to toll the exclusive purchase period for an apartment in the subject premises, to enjoin defendants from selling the apartment to any other prospective purchaser, and to enjoin defendants from interfering with plaintiff's use and possession of the apartment, unanimously reversed, on the law, with costs, and the matter remanded for a hearing to determine plaintiff's status as a bona fide Mitchell Lama tenant.
The premises at issue here were constructed under the Mitchell-Lama program. In an affordability plan dated July 17, 2018, defendants proposed withdrawing the building from the Mitchell-Lama plan by converting the building into two condominium units — a retail unit and a residential unit, the latter of which would operate as a cooperative housing corporation. Plaintiff, whose mother was the named tenant of an apartment in the premises, lived in the apartment with her mother from 1996 until the mother's death in 2019. Nonetheless, when plaintiff tried to obtain a lease in her own name, defendants informed her that she was not a bona fide Mitchell Lama tenant because her mother had not vacated the apartment as of the affordability plan's July 31, 2018 effective date. Plaintiff contends that she is entitled to a lease and to the first opportunity to purchase the apartment, at a below-market price. As relevant here, plaintiff seeks a preliminary injunction tolling the exclusive purchase period.
Plaintiff has established a sufficient likelihood of success on the merits. The purpose of a provisional injunction "'is not to determine the ultimate rights of the parties, but to maintain the status quo until there can be a full hearing on the merits'" (Pamela Equities Corp. v 270 Park Ave. CafÉ Corp., 62 AD3d 620, 621 [1st Dept 2009], quoting Residential Bd. of Mgrs. of Columbia Condominium v Alden, 178 AD2d 121, 122 [1st Dept 1991]). Accordingly, "[t]o establish a likelihood of success on the merits, a prima facie showing of a reasonable probability of success is sufficient" (Barbes Rest. Inc. v ASRR Suzer 218, LLC, 140 AD3d 430, 431 [1st Dept 2016] [internal quotation marks and alterations omitted]). Plaintiff has presented a potentially meritorious interpretation of the affordability plan. At the preliminary injunction stage, that is sufficient likelihood of success to warrant maintenance of the status quo. Moreover, tolling the exclusive purchase period will maintain the status quo pending determination of whether plaintiff is a bona fide Mitchell Lama tenant (see Pamela Equities Corp., 62 AD3d at 621; see also Jones v Park Front Apts., LLC, 73 AD3d 612, 613 [1st Dept 2010] [granting preliminary injunction only against eviction, to maintain status quo pending trial]).
Contrary to defendants' contention, plaintiff established a sufficient likelihood of success on the merits by showing a meritorious argument [*2]that she was included in the definition of a "bona fide Mitchell Lama tenant" under proposed affordability plan's section 5(iii). That section stated that a bona fide Mitchell Lama tenant was defined "as of the Affordability Plan effective date" as either "the tenant named in the existing Mitchell Lama lease provided that such person is in actual physical possession and occupancy of the apartment" or, "if the Mitchell Lama tenant shall no longer be in occupancy of the apartment, members of the named tenant's immediate family who resided in the apartment with the named tenant as their primary residence and thereafter continuously and without interruption continued to occupy the apartment as their primary residence and who would qualify for succession as of the Affordability Plan Effective Date if the property had not been withdrawn from the Mitchell Lama Program." Plaintiff demonstrated, for the purposes of injunctive relief, that she met the eligibility criteria under 9 NYCRR 1727-8.2(a) for succession as of the effective date of defendants' affordability plan, by showing she was an immediate family member of the named tenant — namely, her mother — and had occupied the apartment as her primary residence for more than two decades before the effective date.
Defendants' contention that plaintiff is not a bona fide Mitchell Lama tenant because her mother had not vacated the apartment on or before July 31, 2018 is at least arguably not supported by the affordability plan's definition of "bona fide Mitchell Lama tenant." Had defendants intended to carve out an exception to the definition of bona fide Mitchell Lama tenant for immediate family members of the primary tenant who vacated the apartment after the affordability plan became effective (July 31, 2018) but before the exclusive purchase period (beginning April 21, 2021), they could have done so more explicitly, by stating that the family members were bona fide Mitchell Lama tenants only if they "qualified" or "have qualified" for succession under the regulations as of the effective date, not that they "would qualify" as of that date. Although section 5(viii) states that lease succession will not be permitted, that section goes on to say that immediate family members would be afforded the same rights as a non-purchasing tenant if they lived in the apartment and "would qualify" for succession under the regulations.
Plaintiff has also demonstrated irreparable harm. It is well established that the loss of one's long-term home constitutes irreparable harm (see e.g. Jones, 73 AD3d at 613). Without injunctive relief, at the end of the exclusive purchase period, defendants would be free to sell the apartment to any other prospective purchaser. Plaintiff would thus permanently lose her right to purchase the apartment, even if the court were later to find for plaintiff.
For the same reasons, the balance of the equities favor plaintiff, a senior citizen who has demonstrated prima facie that she has lived [*3]in the apartment for decades. By contrast, a preliminary injunction will merely delay defendants' sale of the apartment should they ultimately succeed on the merits (see Sau Thi Ma v Xuan T. Lien, 198 AD2d 186, 186-187 [1st Dept 1993], lv dismissed 83 NY2d 847 [1994]).
Although defendants have submitted evidence that plaintiff owns other apartments in the city, that fact requires a factual hearing as to, inter alia, plaintiff's
primary residence. It does not preclude a preliminary injunction (see Barbes Rest. Inc., 140 AD3d at 431 ["A likelihood of success on the merits may be sufficiently established even where the facts are in dispute and the evidence need not be conclusive"]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 13, 2022